**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**AT FRANKFORT**
*Electronically Filed*

| | | |
|---|---|---|
| **KENTUCKY PROTECTION** | ) | |
| **AND ADVOCACY** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | No. 3:25-cv-00059-GFVT |
| | ) | |
| | ) | |
| **RANDY WHITE** | ) | |
| **Commissioner** | ) | |
| **Department of Juvenile Justice** | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY**
**AND PERMANENT INJUNCTIVE RELIEF**

**\* \* \* \* \* \* \* \* \* \* \***

This case arises under a set of federal laws and regulations whose purpose is to create an

independent system throughout the United States to protect and advocate for individuals with

disabilities in all places where they live or receive services. Congress passed these laws in

response to reports exposing inhumane and abusive conditions at New York State's Willowbrook

State School and similar institutions across the United States that warehoused individuals with

intellectual and developmental disabilities during the 1960s and 1970s. Congress enacted the

Developmental Disabilities Act (PADD Act) in 1975, which created a system of independent,

federally-funded state agencies to remedy the lack of oversight that allowed this systemic abuse

and neglect. Congress explicitly authorized our agencies to access to facilities, individuals, and records to protect the most vulnerable from the pervasive abuse and neglect of individuals with intellectual and developmental disabilities and to preserve their rights. In subsequent years, Congress expanded the protection and advocacy system to include individuals with mental illness (PAIMI), brain injuries (PATBI) and other disabilities not addressed by the PADD Act, (collectively the P&A Acts).

The P&A Acts give protection and advocacy agencies the authority to pursue legal, administrative, and other appropriate remedies to ensure the protection of, and advocacy for, the rights of individuals with disabilities and the authority to investigate incidents of abuse or neglect if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred. 42 U.S.C. § 15043(a)(2)(I); 42 U.S.C. § 10805(a)(4)(b). These agencies must be independent of any agency that provides treatment, services, or habitation of individuals with disabilities. 42 U.S.C. § 15043(2)(G); 42 U.S.C. § 10802(a)(2). They have broad access to individuals with disabilities and the places where they live or receive services for the purposes of investigation and monitoring, and access individual records in certain instances. 42 U.S.C. § 15043(2)(H) & (I); 45 C.F.R. §§ 1326.25 & 1326.27; 42 U.S.C. §§ 10805((3) & (4); 42 C.F.R. §§ 51.41 & 51.42. Those records must be kept confidential. 42 U.S.C. § 10806; 45 C.F.R. § 1326.28; 42 C.F.R. § 51.46

## RELEVANT FACTS

On October 1, 2025, Kentucky Protection & Advocacy (P&A) monitored the Adair Regional Juvenile Detention Center and Adair Youth Development Center, one of the Department of Juvenile Justice (DJJ) facilities which houses children and youth involved in the juvenile justice system. P&A routinely monitors Adair and other DJJ facilities to (1) provide information and referral to the residents about programs addressing the needs of individuals with

mental illness and other disabilities, (2) to provide information and training to the residents about their individual rights, and services that are available from the P&A system, and (3) to monitor DJJ's compliance with the rights and safety of the facility's residents by interviewing children and youth there. 42 C.F.R.§ 51.42(c); 45 C.F.R. § 1386.27(c)(2).

While there, P&A interviewed two young men with mental health diagnoses who reported incidents of potential abuse or neglect:

1. Resident B.G., age 16, reported he did not receive timely, appropriate medical treatment for broken bones following a fight with a peer on Saturday, September 27. B.G. reported OC spray was deployed to stop the fight, and he was then placed in handcuffs. He complained to staff of pain and swelling. He was allowed to decontaminate and then taken to the nurse, who gave him ibuprofen. He continued to complain of pain and swelling and the following day (Sunday) an x-ray was done at the facility, but he received no further treatment that day. It was not until Monday, September 29 that he was taken to see a doctor, who diagnosed him with broken bones in his arm and wrist and began treatment.

2. Resident D.A., age 16, reported the inappropriate use of OC spray and restraint. He reported that on Tuesday, September 30, 2025, he got into an altercation with two peers, but that the altercation was over and he was walking away from the youth when he heard staff say, "Spray him, get him." D.A. reported he was sprayed in the back of the head and fell to the ground where he was then restrained.

Both youths are dually committed to DJJ and the Department of Community Based Services within the Cabinet for Health and Family Service pursuant to K.R.S. 635.060(4)(a) and K.R.S. 620.140(d), respectively. Prior to leaving the monitoring visit, P&A requested copies of the Incident Reports prepared by DJJ regarding those incidents. DJJ did not provide the

requested documents but instead questioned the legal basis for P&A's receipt of those reports

which was provided to DJJ. (Exhibit A (emails between DJJ Attorney and P&A Attorney);

Exhibit B (Letter to DJJ Attorney dated October 2, 2025))

As noted in P&A's response to DJJ, P&A has access to all records of:

(a) any individual (including an individual who has died or whose whereabouts
are unknown)—
    (i) who by reason of the mental or physical condition of such individual is
    unable to authorize the system to have such access;
    (ii) who does not have a legal guardian, conservator, or other legal
    representative, or for whom the legal guardian is the State; and
    (iii) with respect to whom a complaint has been received by the system or
    with respect to whom as a result of monitoring or other activities (either of
    which result from a complaint or other evidence) there is probable cause to
    believe that such individual has been subject to abuse or neglect.
42 U.S.C. § 10805(a)(4)(B)[1].

Records to which P&A has access include:

reports prepared by any staff of a facility rendering care and treatment or reports
prepared by an agency charged with investigating reports of incidents
of abuse, neglect, and injury occurring at such facility that describe incidents
of abuse, neglect, and injury occurring at such facility and the steps taken to
investigate such incidents, and discharge planning records.
42 U.S.C. § 10086(b)(3).

Here, both young men are minors and thus unable to authorize P&A to receive the Incident

Reports, the state is their legal guardian, and P&A has received complaints where there is

probable cause to believe each of them was subject to abuse or neglect.

Following P&A's response to DJJ's request to provide its legal basis for receipt of the

Incident Reports, DJJ demanded that P&A use its forms created pursuant to 505 K.A.R. 2:040 to

have the juveniles release those records. (Exhibit A (Emails); Exhibit C (DJJ Authorization for

Release of Patient Medical or Mental Health Records); Exhibit D (DJJ Authorization for Release

---

[1] While there is a similar statute under the PADD Act, this and subsequent citations are to the PAIMI Act since the young men here have mental health issues and are thus covered by the PAIMI Act. Overall, the records access provisions of the P&A Acts are meant to be consistent. *Alabama Disabilities Advocacy Prog. v. J.S. Tarwater Dev. Ctr.*, 894 F. Supp. 424, 428 (M.D. Ala. 1995)

of Youth Records)). P&A responded by letter on October 9, 2025, noting that K.R.S. 2.015 specifically states that 18 is the age of majority, requesting any statutory authority for its contention that minors have the legal ability to consent to a records release, and again asserting P&A's authority under federal law to access the requested records. (Exhibit E (Letter to DJJ Attorney dated October 9, 2025)). On October 30, 2025, Justice and Safety Public Cabinet Office of Legal Services General Counsel emailed the P&A Attorney again asserting P&A must obtain the youth's authorization on DJJ's Release of Information forms to obtain the reports. She cited 505 KAR 2:040 as the legal authority for imposing this prerequisite to P&A's access to the requested documents. (Exhibit F (emails between JPSC Attorney and P&A Attorney)). P&A responded on October 31, 2025, again requesting any legal statutory authority that preempts KRS 2.015 and authorizes minors in DJJ custody to have the legal ability to consent to a records release, reasserting P&A's federal access authority, and requesting the reports by noon on November 3, 2025. (Exhibit F)

No records have been received.

## LAW IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF

Federal Courts use the following factors when analyzing a motion for preliminary injunction: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the injunction. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

While it is true that a preliminary injunction is an extraordinary remedy, here it is justified. *Id*. In denying access to records, Defendant is obstructing Plaintiff's ability to perform its federally mandated and required task to protect and advocate for individuals with disabilities

by investigating reports of abuse and neglect who are involuntarily detained in the Defendant's facilities.

## P&A Will Succeed on the Merits

Plaintiff can easily show that the legal merits are in its favor as Federal statutes and regulations clearly provide access to the requested records prepared by DJJ regarding incidents occurring at its facilities. P&A must be given "all records" of any individual with a mental health disability (a) who is unable due to mental or physical condition is not able to authorize access, (b) whose guardian is the state, and (c) for whom the P&A has received a complaint as the result of monitoring and that there is probable cause to believe abuse or neglect occurred. 42 U.S.C § 10805(a)(4)(B). Incident Reports are one of the types of records to which P&A has access; the PAIMI Act explicitly authorizes access to reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records. 42 U.S.C. § 10806(b)(3)(A).

Turning to the three factors in 42 U.S.C § 10805(a)(4)(B)—all are met.

### a. The minority of the youths render them legally unable to authorize P&A access

The age of majority in Kentucky is 18. K.R.S. 2.015. Minors are deemed incapable due to their minority to consent to health care treatment and unable to make healthcare decisions. *See* K.R.S. 387.065(3)(b) (guardians of minors specifically tasks with consenting to medical treatment). Both young men here are 16 years old and thus still minors who cannot authorize P&A to have access to the Incident Reports.

DJJ insists that P&A use one of its two Release of Information forms (Exhibits C & D) it claims is required under 505 KAR 2:040. These forms are not applicable for two reasons. First,

administrative agencies are prohibited from promulgating regulations that conflict with, extend the meaning of, or are contrary to state statute. K.R.S. 13A.120. Where such a conflict exists or the regulation is otherwise not authorized by statute, the regulation is void. KRS 13A.130. There is no specific statutory authority supporting a regulation that modifies or creates an exception to KRS 2.015, which establishes the age of majority as 18. If no such statutory authority exists, any regulatory language allowing a minor to authorize the release of highly confidential information or records to third parties conflicts with state law, exceeds the Department's rulemaking authority, and is void under KRS 13A.120 and 13A.130. Second, the first form (Exhibit A) specifically excludes medical or mental health records—one of the Incident Reports is about a broken wrist for which the young man allegedly did not receive timely medical care. Accordingly, even assuming arguendo the regulation allowed B.G. to authorize the release of his general DJJ records, he still could not authorize the release of the *requested* document.

### b. The youths' guardian is the State

It is uncontested that the guardian of both young men is the state as they are dually committed to DJJ and the Department for Community Based Services within the Cabinet for Health and Family Services, agencies of the state. KRS 15A.065(d); KRS 15A.020(c); KRS 194.030(6).

### c. The information the youth reported provides probable cause that abuse or neglect occurred.

The information provided by the youths during the monitoring visit on October 1, 2025, clearly provide P&A probable cause to believe that they have been subject to abuse or neglect. "It is well-settled that a protection and advocacy system is the 'final arbiter of probable cause for the purpose of triggering its authority to access all records for an individual that may have been subject to abuse or neglect.'" *Ohio Legal Rts. Serv. v. Buckeye Ranch, Inc.*, 365 F. Supp. 2d 877,

887 (S.D. Ohio 2005) (citing *Arizona Center for Disability Law v. Allen,* 197 F.R.D. 689, 693

(D.Ariz.2000).

B.G. complained that he did not receive timely medical treatment—he broke his wrist on

Saturday and, despite his complaints of continued pain and swelling, did not see a doctor to be

placed in a cast until the following Monday and was given only Ibuprofen for his pain. Under the

PAIMI regulation, 42 CFR § 10801, "neglect" is:

> a negligent act or omission by an individual responsible for providing services in
> a facility rendering care or treatment which caused or may have caused injury or
> death to an individual with mental illness or which placed an individual with
> mental illness at risk of injury or death, and includes, but is not limited to, acts or
> omissions such as failure to: establish or carry out an appropriate
> individual program or treatment plan (including a discharge plan); *provide
> adequate nutrition, clothing, or health care;* and the failure to provide a safe
> environment which also includes failure to maintain adequate numbers of
> appropriately trained staff. (Emphasis Added)

The second complaint—pepper spray deployment against D.A. after any danger or potential

danger has passed in violation of 505 K.A.R. 1:210—meets the definition of abuse under the

aforesaid regulation. Abuse is defined as:

> any act or failure to act by an employee of a facility rendering care or
> treatment which was performed, or which was failed to be performed,
> knowingly, recklessly, or intentionally, and which caused, or may have
> caused, injury or death to an individual with mental illness, and includes
> but is not limited to acts such as: rape or sexual assault; striking; the use of
> excessive force when placing an individual with mental illness in bodily
> restrains; *the use of bodily or chemical restraints which is not in
> compliance with Federal and State laws and regulations*; verbal,
> nonverbal, mental and emotional harassment; and any other practice which
> is likely to cause immediate physical or psychological harm or result in
> long-term harm if such practices continue. 42 CFR § 51.2. (Emphasis
> Added).

Therefore, P&A easily can show that the legal merits are in its favor, and it will succeed.

## P&A Will Suffer Irreparable Harm

If a preliminary injunction is not issued, P&A will be irreparably harmed as it will continue to be unable able to fulfill its federal mandate of investigating incidents of abuse and neglect when it has probable cause to believe that the incident occurred. 42 USC § 10805(a)(1)(A). "If the Program is denied records, it suffers a direct injury to its statutory interest in investigating abuses, to the extent that such an investigation entails examining records, and to its statutory interest in the records themselves." *Alabama Disabilities Advoc. Program v. J.S. Tarwater Developmental Ctr.,* 894 F. Supp. 424, 427 (M.D. Ala. 1995), aff'd, 97 F.3d 492 (11th Cir. 1996). Likewise, in *Ohio Legal Rts. Serv. v. Buckeye Ranch, Inc.*, 365 F. Supp. 2d 877, 883 (S.D. Ohio 2005), a case similar to the one here, the Court noted, "There is no dispute that a protection and advocacy agency's inability to meet its federal statutory mandate to protect and advocate the rights of disabled people constitutes irreparable harm." (citing S*tate of Connecticut Office of Protection and Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.,* 355 F.Supp.2d 649, 653 (D.Conn.2005).

## No Substantial Harm To Others Will Occur

Plaintiff can envision no substantial harm caused to others if the Court grants the preliminary injunction. On the contrary, Defendant is harming youth in the custody of DJJ by not following federal law. The P&A Acts require Defendant to provide Plaintiff the records it has requested as the state protection and advocacy agency, mandated by federal law to protect and advocate for individuals with disabilities as well as to investigate abuse and neglect of those individuals. Rather, Defendant should welcome the oversight that a P&A investigation provides in that its own legal interests are served when abuse or neglect is uncovered and can be remedied/corrected.

There is no harm to the vulnerable youth being detained by Defendant, particularly those under state commitment who often have no family involvement or outside oversight—P&A's monitoring and investigations ensure their safety and protect their rights. Further, P&A must keep records confidential to the same extent as the disclosing agency and as required by Federal and State law, so there is no argument that youth may be harmed by potential redisclosure of confidential or protected information. 42 U.S.C. § 10805(b); 42 C.F.R 51.45(a)(1).

Finally, there is no harm to the public who benefit not only from Defendant being required to follow the law but also from a robust protection and advocacy system operating at full authority that ensures youth are not subject to abuse or neglect in the juvenile detention system.

### Public Interest Demands Release of the Records

The public has a strong interest in protecting the rights of individuals with disabilities, particularly children and youth with disabilities who are separated from their families and isolated in an institutional setting often far from home. This protection necessarily includes ensuring not only that abuse and neglect is discovered and properly investigated, including that children and youth receive appropriate care and treatment in DJJ facilities but also supports P&A's unique role to act as an overseer of service providers of vulnerable individuals with disabilities.

In balance, the four preliminary injunction factors all fall heavily in favor of Plaintiff. *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537-538 (6th Cir.1978) (no one factor is determinative). Thus, Plaintiff asks the Court to grant the Motion for Preliminary Injunction. Plaintiff "has, at minimum, shown serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399-400 (6th Cir. 1997).

Lastly, if the Court issues a preliminary injunction, Plaintiff asks that the Court not require security pursuant to Federal Rule of Civil Procedure (FRCP) 65(c). The Court has discretion in ordering a bond. *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 538–39 (6th Cir. 1978). There is no evidence of risk of monetary damage to DJJ for its failure to fulfill its statutory duties. *USACO Coal Co. v. Carbomin Energy, Inc.,* 689 F.2d 94, 100 (6th Cir. 1982) ("The purpose of a security deposit in this context is to protect the party injured from damage occasioned by the injunction."). Moreover, the Sixth Circuit has recognized that a strong likelihood of success and compelling public interest are factors appropriately compelling to justify waiver of the Rule 65(c) bond requirement. *Moltan Co. v. Eagle-Picher Industries, Inc.,* 55 F.3d 1171 (6th Cir. 1995).

## PERMANENT INJUNCTION

"In general, '[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that [for a preliminary injunction] the plaintiff must show a likelihood of success on the merits rather than actual success.'" *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012)) (quoting *Amoco Prod. Co. v. Vill. of Gambell,* 480 U.S. 531, 546 n. 12 (1987)). As this is the case, only the issue of "actual success" on the merits will be addressed; the three other standards are addressed above.

P&A's request for records was issued on October 1, 2025. The PAIMI Act mandates the "prompt" production of records in response, which when read with the PADD Act,[2] is specified as three business days. 42 C.F.R. §1326.25(c)(2); 42 C.F.R. § 51.41(a). It is now 34 days after the request and DJJ still has not produced the records. DJJ's failure to provide the requested records is clearly contrary to the plain language of the federal statutes and regulations whose purpose is

---

[2] As noted in Footnote 1, the Acts are to be interpreted consistently. Even applying the PAIMI Act requirement of "prompt", it cannot be argued that 34 days is prompt.

to protect and advocate for vulnerable individuals with disabilities and to investigate abuse and neglect of those individuals.

## CONCLUSION

PA& has satisfied all of the factors required for a preliminary and permanent injunction. PA& has proved that there is a strong likelihood of success and actual success on the merits of its claims that DJJ is violating 42 U.S.C. § 10805(4)(B) by refusing to provide access to the requested Incident Reports of two minor individuals in its facility, whose guardian is the state, and for whom the P&A has received complaints that they were subject to abuse or neglect. Injunctive relief is both appropriate and necessary to redress these harms and ensure P&A is able to accomplish its Congressional mandate on behalf of vulnerable youth.

Respectfully submitted,

s/ Heidi Schissler Lanham
Heidi Schissler Lanham, Ky. Bar No. 83941
Lucy M. Heskins, Ky. Bar No. 89891
Protection and Advocacy
11 Mill Creek Park, Suite 100
Frankfort, KY 40601
(502) 564-2967
heidi.schissler@ky.gov
lucy.heskins@ky.gov
Counsel for Plaintiff

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Motion, Supporting Memorandum, and Proposed Order was filed electronically with the Court on November 4, 2025 by using the CM/ECF system. Notice of this filing was sent to all parties, including those listed below, by operation of the Court's CM/ECF system and that service will be accomplished by the CM/ECF system. All Parties are registered CM/ECF users and may access this filing through the Court's CM/ECF system.

Russell Coleman
Kentucky Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601

William Codell
Department of Juvenile
1025 Capital Center Drive
Third Floor
Frankfort, Kentucky 40601

s/ Heidi Schissler Lanham
Counsel for Plaintiff