UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

|  |  |  |
|---|---|---|
| KENTUCKY PROTECTION AND ADVOCACY, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:25-cv-00059-GFVT |
| V. | ) ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| RANDY WHITE, *in his official capacity as Commissioner of the Kentucky Department of Juvenile Justice,* | ) ) ) ) ) | **ORDER** |
| Defendant. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This case arises from the intersection of two State agencies asserting conflicting interests in the protection of juveniles within their programs.  Kentucky Protection and Advocacy asserts that its interest in protecting juveniles in the custody of the State from abuse and neglect outweighs a juvenile's privacy interest in consenting to the release of their confidential records. The Kentucky Department of Juvenile Justice takes the opposite stance.  This matter is presently before the Court on Plaintiff Kentucky Protection and Advocacy's Motion for Preliminary and Permanent Injunction.  [R. 3.]  For the reasons stated below, Plaintiff's Motion for Preliminary Injunction **[R. 3]** is **GRANTED** and Plaintiff's Motion for Permanent Injunction **[R.3]** is **DENIED.**

**I**

In 1975, Congress enacted the first of a collection of laws designed to protect individuals with intellectual and developmental disabilities, the Developmental Disabilities Act (PADD Act).  42 U.S.C. § 15001 *et seq.*  Subsequently, in an effort to specifically extend protection to

individuals with mental illness, Congress enacted the Protection of Mentally Ill Individuals Act of 1986 (PAIMI Act).[1]  42 U.S.C § 10801(b).  In enacting the PAIMI Act, Congress found that individuals with mental illness are vulnerable to abuse and serious injury and subject to neglect.  42 U.S.C. § 10801(a).  Congress further found that State systems for monitoring the rights of individuals with mental illness "vary widely and are frequently inadequate."  *Id.*  Thus, Congress sought to ensure the protection of such individuals by assisting States in establishing and operating a protection and advocacy for individuals with mental illness.  42 U.S.C. § 10801(b).

Under the PAIMI Act, Congress directed each State to establish an agency charged with "protect[ing] and advocat[ing] the rights of individuals with mental illness" and "investigat[ing] incidents of abuse and neglect of individuals with mental illness" if the incidents are either reported to the agency or if the agency has probable cause to believe that such an incident has occurred.  42 U.S.C. § 10803(2).  The Kentucky legislature designated Kentucky Protection & Advocacy (KP&A) as the protection and advocacy system for individuals with disabilities in the Commonwealth of Kentucky.  Ky. Rev. Stat. Ann. §§ 31.010; 31.030.

To ensure that the rights of individuals with mental illness are protected, Congress explicitly authorized KP&A to have access to the records of individuals with mental illness under the PAIMI Act.  42 U.S.C. § 10805(4).  Relevant to this action, the PAIMI Act grants KP&A the authority to access records of individuals: (1) "who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access," (2)

---

[1] Some courts use the abbreviation "PAMII" to refer to this statute.  In 1988, Congress amended the statute to remove all references to the phrase "mentally ill individuals" and replaced those references with "individuals with mental illness."  *See* Requirement Applicable to Protection and Advocacy of Individuals with Mental Illness, 62 Fed. Reg. 53549-01 (Dep't of Health & Human Servs. Oct. 15, 1997) (Final rule).  The title remained unchanged, but in light of the foregoing and because the parties have both used "PAIMI" in their pleadings, the Court opts to use this abbreviation throughout.

"for whom the legal guardian is the State," and (3) "with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring. . .there is probable cause to believe that such an individual has been subject to abuse or neglect." 42 U.S.C. §10805(a)(4)(B). The records to which PAIMI grants access include "reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records." 42 U.S.C. § 10806(b)(3)(A).

In Kentucky, the Kentucky Department of Juvenile Justice ("Department") is mandated by statute to promulgate regulations governing juvenile detention centers. Ky. Rev. Stat. Ann. §15A.210. Pursuant to this mandate, the Department promulgated a regulation governing juvenile records. *See* 505 KAR 2:040. Relevant to this action, this regulation provides that a juvenile must sign a "release of information consent form" before the Department releases information maintained in the juvenile's record. 505 KAR 2:040(10). The Department uses two such forms—one that authorizes the release of medical and mental health records, and one that authorizes the release of all other records. [R. 6-3.]

Turning to the facts that gave rise to this action, on October 1, 2025, KP&A Senior Staff Attorney Stacy Coontz and Disability Rights Advocate Robin Halvorson conducted a monitoring visit at Adair Regional Juvenile Detention Center and Adair Youth Development Center. [R. 10 at 6.] KP&A alleges that during this visit, two sixteen-year-old residents with mental health diagnoses reported incidents of potential abuse or neglect. [R. 10 at 7.] KP&A alleges that Ms. Halvorson requested the incident reports regarding those two residents before leaving the Adair facility on October 1. [R. 10 at 8.] By email, Kentucky Department of Juvenile Justice Assistant

General Counsel William Codell requested that KP&A provide authority granting it the right to access records without consent of the juvenile residents who reported the incidents.  [R. 3-3 at 6.]

KP&A Legal Director Heidi Schissler Lanham responded to Mr. Codell, asserting that KP&A's authority under the PAIMI Act to access records without the consent of the juvenile residents arises from a Kentucky statute which states that eighteen is the age of majority, and thus minors lack the legal ability to consent to a records release.  [R. 3-4.]  Ms. Lanham asserted that because minors lack the legal ability to consent to a records release, the PAIMI Act grants KP&A access to their records without prior permission.  *Id.*  Mr. Codell responded requesting that KP&A obtain authorization from the juveniles themselves and provided KP&A with the Department's Release of Information forms.  [R. 3-3 at 3; R. 3-5; R. 3-6.]  Mr. Codell asserted that Kentucky law recognizes a juvenile's right to consent to the release of their records.  [R. 3-3 at 3.]  The parties stand firm in their positions, giving rise to the present dispute.

KP&A asserts that the Department's refusal to provide KP&A with the requested records deprives KP&A of its statutory rights under the PAIMI Act.  [R. 10 at 9.]  KP&A further claims that the Department's imposition of restrictions and conditions on KP&A's exercise of its federally mandated right of access to monitor the facilities under the Department's control deprives KP&A of a right secured by federal law.  *Id.* at 10.  KP&A seeks both a preliminary and permanent injunction and requests that the Court waive the security requirement under Federal Rule of Civil Procedure 65(c), in the event of a ruling in its favor.  [R. 3.]  The Department has responded to KP&A's motion and KP&A filed its reply brief.  [R. 6; R. 7.]  Neither party has requested a hearing on this matter, and the Court is satisfied that it can resolve the motion on the basis of the filings in the record.  Thus, this matter is ripe for review.

4

## II

### A

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)) (cleaned up) ("[A] preliminary injunction involv[es] the exercise of a very far-reaching power . . .")).  Because of the unique procedural posture brought on by a motion for preliminary injunction, the Court notes that the nature and purpose of a preliminary injunction inform the analysis.  As the Supreme Court has stated:

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary injunction hearing.

*Univ. of Texas v. Camenisch*, U.S. 390, 395 (1981). Therefore, the findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits.  *Id.*  It is through this lens the Court makes the following findings of fact and conclusions of law.

To issue a preliminary injunction, the Court must consider whether: (1) the movant shows a likelihood of success on the merits; (2) the movant will suffer irreparable harm if the injunction is not issued; (3) the issuance of the injunction would cause substantial harm to others; and (4) the public interest would be served by issuing the injunction. *Overstreet*, 305 F.3d at 573. Although no one factor is determinative, Courts have often noted that the first prong is unique in

5

that failing to prove at least *some* likelihood of success on the merit is "usually fatal" to obtaining injunctive relief. *Gonzales v. Nat'l Bd. Of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). However, "[a]s long as there is some likelihood of success on the merits, the factors are to be balanced, rather than tallied." *Hall v. Edgewood Partners Ins. Co., Inc.*, 878F. 3d 524, 527 (6th Cir. 2017).

**1**

**a**

Before addressing the "likelihood of success on the merits" element, the parties disagree on the applicable standard for purposes of the instant motion. KP&A asserts that it must only show a "strong likelihood of success on the merits." [R. 3-1 at 5.] The Kentucky Department of Juvenile Justice on the other hand, posits that KP&A must show a "clear and substantial likelihood of success on the merits" because the relief requested by KP&A—disclosure of confidential records—cannot be undone if the Department were to prevail on the merits at trial. [R. 6 at 5.]

The notion that a heightened standard is appropriate when the requested relief cannot be reversed arises out of a distinction between "mandatory" and "prohibitory" injunctions, with the former compelling an affirmative act on the part of the non-movant and the latter ordering the non-movant to refrain from action. *See Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). However, the Sixth Circuit does not subscribe to this reasoning, and instead applies the traditional preliminary injunction standard to motions for mandatory injunctive relief, as well as motions for prohibitory injunctive relief. *United Food & Com. Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (noting that "the distinction between mandatory and prohibitory injunctive relief is not

6

meaningful" and "if the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter to situation so as to prevent injury."). Even Circuits that recognize the distinction concede that often the distinction is "more semantic than substantive." *Tom Doherty*, 60 F.3d at 34. Accordingly, the Court finds that the traditional standard of "strong likelihood" of success on the merits suffices for the resolution of the instant matter.

**b**

Turning to KP&A's likelihood of success on the merits, the Court finds that this factor weighs in favor of granting a preliminary injunction. Under PAIMI, for KP&A to gain access to records of individuals without prior authorization, three criteria must be present. 42 U.S.C. § 10805(a)(4)(B). The PAIMI Act grants KP&A the authority to access records of individuals: (1) "who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access," (2) "for whom the legal guardian is the State," and (3) "with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring. . .there is probable cause to believe that such an individual has been subject to abuse or neglect." *Id.*

**i**

The Kentucky Department of Juvenile Justice does not dispute that the second and third elements are satisfied, so the crux of this dispute hinges on whether the juveniles that made reports of abuse and neglect to KP&A are "by reason of the[ir] mental or physical condition unable" to authorize KP&A's access to their records. *Id.* KP&A takes the position that, under Kentucky law, the age of majority is eighteen, and minors are deemed incapable due to their minority to consent to health care treatment and unable to make healthcare decisions. [R. 3-1 at 6 (citing Ky. Rev. Stat. Ann. §§ 2.015, 387.065(3)(b).] It follows then, KP&A asserts, that

7

because both juveniles at issue in this case are sixteen years old, they—by reason of their status as minors—are unable to authorize KP&A to have access to the Incident Reports. [R. 3-1 at 6.]

The Department counters that minority status alone does not constitute a mental or physical condition that makes an individual unable to make decisions. [R. 6 at 5.] The Department asserts that the Kentucky Administrative Code contemplates that juveniles in its custody possess the capacity to make informed decisions about disclosure of their records. [R. 6 at 9 (citing 505 KAR 2:040).] As further support, the Department provides examples of legal decisions that minors are authorized to make, including waiving *Miranda* rights and consenting to substance abuse treatment, mental health services, reproductive healthcare, and medical examinations following sexual assault. [R. 6 at 9.] The Department's position is that these rights do not conflict with Ky. Rev. Stat. Ann. § 2.015, but rather they "recognize that minors possess decision-making capacity in defined circumstances." *Id.*

KP&A spends a portion of its reply brief discussing the changes that a minor's brain undergoes during adolescence, particularly in the pre-frontal cortex, which affect "abstract thinking, judgment, impulse control, and understanding of consequences." [R. 7 at 3-4.] This leads KP&A to its conclusion that "age is the quintessential indicator of the physical and mental condition of an individual" and "the statutorily defined criteria identifying when an individual has the legal capacity to consent to the authorization of the release of their records." *Id.* at 4.

Neither party provides much by way of directly relevant authority, but to be fair, this particular issue appears to not have been confronted with great frequency.[2] A factually similar

---

[2] Protection and advocacy systems most often invoke this specific provision of the PAIMI Act when the individual is deceased, thus making them unable, by reason of their physical condition, to authorize access. *See e.g. Office of Protection and Advocacy for Persons with Disabilities v. Armstrong,* 266 F.Supp.2d 303, 317 (D. Conn. 2003).

case from a sister court provides some insight.  In *Ohio Legal Rights Service v. Buckeye Ranch, Inc.*, Ohio's protection and advocacy system sought restraint logs maintained by the defendant, following reports of an injury to a 13-year-old mentally ill child residing at the defendant's facility.  365 F.Supp.2d 877, 880 (S.D. Ohio 2005).  After some discussion between the parties, the facility produced many of the documents sought by the P&A system, but withheld some of the restraint logs.  *Id.*  On summary judgment, the Court held that the child at issue lacked the capacity to authorize access under 42 U.S.C. § 10805(a)(4)(B)(i).  *Id.* at 884.  The Court reasoned that under Ohio law, minors are presumed incompetent to make health care decisions and furthermore, the child was not only a minor, but also mentally ill.  *Id.*

Importantly, the Court held that it is the facility's affirmative burden to show that the minor has the capacity to authorize access, rather than the P&A system's burden to demonstrate that the minor is unable to authorize access.  *Id.* at 885.  In an effort to satisfy its burden, a representative from the facility in *Buckeye Ranch* provided testimony that the child at issue there was able to communicate and express her wishes.  *Id.*  However, the Court noted that the facility failed to provide details about the child's ability to communicate, her level of maturity, her awareness of her owns needs, or her ability to make decisions.  *Id.*  Thus, the defendant had not overcome the presumption in favor of record access.  *Id.*  The Kentucky Department of Juvenile Justice finds itself in a similar position.

At this early juncture, the Court agrees that KP&A has demonstrated that the particular juveniles at issue here are likely "unable to authorize" release of their records due to their physical or mental condition.  Several courts have held that PAIMI does not require a protection and advocacy system to conclusively "make a threshold showing of mental illness."  *State of Conn. Off. of Prot. & Advocacy for Persons with Disabilities v. Hall*, 355 F.Supp.2d 649, 655

9

(D. Conn. 2005) (collecting cases).  A showing of substantial evidence, not conclusive evidence that a particular person qualifies as an individual with mental illness suffices.  *Id.*  One court even said that requiring a conclusive, individualized showing of mental illness "would reserve a gatekeeping function contrary to the specific terms and general purpose of PAIMI."  *Mich. Prot. & Advocacy Serv., Inc. v. Miller*, 849 F.Supp. 1202, 1207 (W.D. Mich. 1994).  Now, many of these cases concerned a facility denying *facility* access to the protection and advocacy system, but the general principles hold true even when records access is at issue.

In Kentucky, minors are presumed incompetent to make health care decisions, although there are limited statutory exceptions.  *See* Ky. Rev. Stat. Ann. §§ 387.065(3)(b), 214.185.  And, like the child at issue in *Buckeye Ranch*, the juveniles at issue here are not only minors, but also have mental health diagnoses.  [R. 3-1 at 3.]  The Department provides no information about these particular juveniles to refute the presumption that minors with mental health diagnoses are unable to authorize KP&A access.  In light of Congress's stated purpose in enacting PAIMI, the Court finds that it is not KP&A's burden to demonstrate that the juveniles are not able to authorize access, but rather, it is the Department's burden to demonstrate that the juveniles *are* able to authorize access, and the Department has not done so here or demonstrated a likelihood that it will be able to.  Having empowered KP&A with both the authority and duty to investigate incidents of suspected abuse and neglect, it would run counter to PAIMI's mandate to require KP&A to conclusively demonstrate that these juveniles are unable to authorize records access.

**ii**

In determining that KP&A has demonstrated a likelihood of success on the merits, the Court need not decide whether 505 KAR 2:040 must be declared void as conflicting with Ky. Rev. Stat. Ann. § 2.015.  In fact, as discussed later, they may be read harmoniously.  However, to

10

the extent that 505 KAR 2:040 conflicts with PAIMI, it must be disregarded by the Kentucky Department of Juvenile Justice as preempted by PAIMI.  Preemption can occur in three scenarios: (1) Congress may enact express preemption language, (2) Congress may create a scheme of federal regulation so pervasive as to leave no room for supplementary state regulation, and (3) state law is preempted to the extent that it actually conflicts with federal law.  *Gade v. Nat'l Solid Wastes Mngmt. Ass'n*, 505 U.S. 88, 109 (1992).

The third category is implicated here.  The Supreme Court has held that where state law "stands as an obstacle to the accomplishment of the full purposes and objective of Congress," the federal law preempts the state law.  *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984). Facing a similar situation, one court concluded that conditioning protection and advocacy systems' record access on a state law that imposed conditions over and above that of PAIMI "thwarts the purpose of PAIMI and serves as an obstacle to the accomplishment and execution of the purposes of PAIMI." *Oklahoma Disability Law Ctr., Inc. v. Dillon Family and Youth Servs.,* 879 F.Supp. 1110, 1111 (N.D. Okla. 1995).

Here, the Department asserts that KP&A must comply with 505 KAR 2:040 in order to obtain the requested records. [R. 6 at 8.]  That regulation imposes a mandatory condition in order to receive juvenile records—namely, a consent form.  505 KAR 2:040(10).  And that mandatory condition requires KP&A to take steps over and above what PAIMI requires of it.  Thus, adopting the Department's reasoning would permit a situation where PAIMI's express language entitles KP&A to records, but 505 KAR 2:040 prevents such access.  "Given the clear purpose of PAIMI, such a result would run counter to the purposes and objectives of Congress in enacting those laws." *Wisconsin Coal. for Advocacy, Inc. v. Czaplewski*, 131 F.Supp.2d 1039, 1049 (E.D. Wis. 2001).  As such, the Kentucky regulation would be preempted to the extent that it interferes

11

with, or stands as an obstacle to, KP&A having access to the records of the juveniles at issue here. "To hold otherwise would fly in the face of the Supremacy Clause of the Constitution." *Id.* at 1048. Thus, the Court finds that KP&A has demonstrated likelihood of success on the merits, at least with respect to the two juveniles at issue here.

**2**

The next factor – whether the movant will suffer irreparable harm in the absence of injunctive relief – weighs slightly in favor of granting a preliminary injunction. The Sixth Circuit has held that this factor is both "indispensable" and "dispositive," in that if the plaintiff is not suffering irreparable harm, there is no need for preliminary relief as opposed to at the end of the lawsuit. *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 327-28 (6th Cir. 2019) ("although the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory." (emphasis in original)); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (noting that even with a high likelihood of success on the merits, a preliminary injunction should not issue unless the plaintiff is likely to suffer irreparable injury in the absence of interim relief). And this makes sense. After all, what distinguishes a preliminary injunction from other forms of relief is that some kind of exigency warrants granting relief based on a record that is not yet fully developed. Additionally, "[t]o merit a preliminary injunction, an injury must be both certain and immediate, not speculative or theoretical." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020) (quotations omitted) (cleaned up).

KP&A asserts that it will be irreparably harmed in the absence of a preliminary injunction because it will continue to be unable to fulfil its federal mandate to investigate incidents of abuse and neglect. [R. 3-1 at 9.] The Kentucky Department of Juvenile Justice retorts that KP&A will not be irreparably harmed in that it will have an adequate remedy at the

conclusion of this action because in the event KP&A prevails on the merits, the Department will provide it with the requested records.  [R. 6 at 11.]  The Department also argues that KP&A has another avenue to gain access to the records it seeks—namely, by asking the juvenile court in the underlying criminal action to release the records for good cause pursuant to Ky. Rev. Stat. Ann. §610.340(1)(a).  *Id.* at 12.  In reply, KP&A asserts that clear precedent recognizes that a protection and advocacy agency's inability to meet its federal statutory mandate constitutes immediate and irreparable harm.  [R. 7 at 7.]  Additionally, KP&A contends that the "alternatives" posed by the Department are merely more timely and more burdensome methods to obtain the requested documents.  *Id.*

Several courts in this circuit and elsewhere have consistently recognized that the denial of records to a protection and advocacy agency amounts to irreparable harm because it impedes the agency's ability to meets it federal statutory mandate to protect and advocate the rights of disabled people.  *See e.g. Ohio Legal Rts. Serv. v. Buckeye Ranch, Inc.*, 365 F.Supp.2d 877, 883 (S.D. Ohio 2005); *State of Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. Of Educ.*, 355 F.Supp.2d 649, 653 (D. Conn. 2005); *Iowa Prot. & Advocacy Servs., Inc. v. Rasmussen,* 206 F.R.D. 630, 635 (S.D. Iowa 2001); *Wisconsin Coal. for Advocacy, Inc. v. Czaplewski,* 131 F.Supp.2d 1039, 1051 (E.D.Wis.2001); *Advocacy Ctr. v. Stalder,* 128 F.Supp.2d 358 (M.D.La.1999).

Although KP&A properly contends that it will suffer irreparable harm in the absence of preliminary injunctive relief, the harm is much narrower than it claims.  To be clear, there is no indication in the record that the particular juveniles at issue in this litigation would not sign the consent forms allowing KP&A access to their records.  And the Department has not *denied* KP&A access to the requested records; but rather, it has *conditioned* access on an additional step

13

that KP&A is unwilling to perform.  Thus, the harm to KP&A at present is limited to the time it takes to perform this extra step, and the resulting interference to its statutory mandate.  Any assertion of harm that *may* arise *if* KP&A had probable cause to believe that abuse or neglect had occurred and the juvenile did not consent to a records release is speculative harm and not properly factored into the current analysis.

As such, the Court takes KP&A's point that preventing an agency from fulfilling a federal statutory mandate constitutes irreparable harm.  While the Department is not preventing KP&A from accessing the records, it is interfering with KP&A's right to access said records by imposing conditions on its access.  Had KP&A requested a juvenile's consent, and the juvenile had declined to consent to a records release, this analysis might look different.  But, that is not the factual predicate the Court is faced with at current.  Accordingly, the Court finds that the interference with KP&A's federal mandate constitutes irreparable harm, though the extent of that harm is limited.  Thus, this factor weighs slightly in favor of granting preliminary injunctive relief.

3

Next, the Court considers whether granting a preliminary injunction will result in substantial harm to others.  When considering this factor, the Court may consider harm to non-parties and to the defendant.  *Chrysler Corp. v. Franklin Mint Corp.*, No. 93-2522, 1994 WL 378144, at *2 (6th Cir. July 19, 1994).  The Kentucky Department of Juvenile Justice argues that granting a preliminary injunction would cause irreparable harm to both the Department and juveniles within their system because "once confidential documents are produced, they cannot be withheld."  [R. 6 at 12.]  The Department asserts that disclosure will harm the juveniles by breaching their right to medical confidentiality, and it will harm the Department by impairing its

14

"ability to develop a confidential relationship with the youth." *Id.* at 13. KP&A, on the other hand, contends that it is under a statutory duty to maintain confidentiality of records. [R. 7 at 8.] Thus, there is no harm because there is no disclosure beyond KP&A and its use of the records solely relates to its investigatory duties. *Id.*

KP&A is right. Under PAIMI, KP&A must "maintain the confidentiality of such records to the same extent as is required of the provider of such services." 42 U.S.C. § 10806(a). Thus, the Department's concerns are misplaced. The confidentiality of the records would not be affected by disclosure to KP&A because under PAIMI, a P&A system must maintain the confidentiality of the records to the same extent as the Department. *Michigan Prot. & Advocacy Serv.*, 849 F.Supp. at 1208 (noting that the defendant's concerns about resident privacy were misplaced because the P&A agency itself has a statutory duty to maintain the confidentiality of any records to the same extent as the defendant); *see also Advocacy Ctr. v. Stalder*, 128 F. Supp.2d 358, 366 (M.D. La. 1999) ( "There is no reason to suspect that the confidentiality of the records will be breached.") In the absence of a risk of substantial harm to either the Department or non-parties, this factor weighs in favor of granting a preliminary injunction.

**4**

Finally, the Court considers whether the public interest would be served by the injunction. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.") At its core, this action involves two state entities asserting distinct interests on behalf of juveniles within their systems. KP&A asserts that the public has a strong interest in protecting the rights of juveniles with mental health diagnoses, which includes ensuring that it investigates and discovers abuse and neglect of juveniles in

15

Kentucky Department of Juvenile Justice facilities. [R. 3-1 at 10.] KP&A also highlights the vulnerability of youth and poses that "[c]onditioning disclosure on a child's authorization— particularly in a juvenile justice facility where the child is almost totally isolated from parents, guardians, or adults outside the system and the alleged perpetrators are the adults who control the child's daily life—would permit abuse to go undiscovered whenever a frightened or intimidated youth declines to sign a form." [R. 7 at 10.] By contrast, the Department contends that the public interest is not served by "inappropriate disclosure of confidential juvenile records." [R. 6 at 13.] Further, the Department poses that juveniles' privacy interests in their confidential records will be diminished by involuntary disclosure. *Id.*

While the protection of confidentiality in the abstract is a significant public interest, as discussed in the prior section, the Department's concerns about disclosure are misplaced because KP&A must maintain the confidentiality of the records to the same extent as the Department. 42 U.S.C. § 10806(a). Additionally, the Department has fallen into a familiar trap of asserting the existence of a general "right to privacy." *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981) (discussing the dissemination of juvenile records, "[t]he Constitution does not encompass a general right to nondisclosure of private information.") Furthermore, "the public interest lies in a correct application of the law." *Commonwealth v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023) (internal quotations and citation omitted). Thus, because PAIMI's mandate favors protection of juveniles against possible abuse and neglect over abstract "privacy interests," the public interest factor weighs in favor of granting a preliminary injunction. As all of the factors weigh in favor of granting a preliminary injunction, the Court will grant KP&A's request for a preliminary injunction.

**B**

Kentucky Protection & Advocacy is entitled to a preliminary injunction.  But how far should that injunction reach?  Turning to the scope of the injunction, both parties ask the Court to view this case through a broad lens—KP&A asking the Court to hold that minority will always be sufficient under § 10805(a)(4)(B)(i) and Kentucky Department of Juvenile Justice asking the Court to hold that minors are presumed able to authorize records access.  [*See e.g.* R. 3-1 at 4 ("Here, both young men are minor and thus unable to authorize P&A to receive the Incident Reports"); R. 6 at 9 ("[J]uveniles in DJJ custody possess the capacity to make informed decision about disclosure of their own records.")]  The Court finds it unnecessary to paint with such a broad stroke, especially at the preliminary injunction stage.  *Commonwealth v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023) ("[F]ederal courts should not issue relief that extends further than necessary to remedy the plaintiff's injury.")

The Court declines to agree with KP&A that minors will *always*, by virtue of their minority, satisfy the language of 42 U.S.C. § 10805(a)(4)(B)(i).  To adopt KP&A's interpretation of Ky. Rev. Stat. Ann. § 2.015 would call into question many Kentucky statutes, regulations, and court decisions that recognize a minor's capacity to consent in limited circumstances.  Ky. Rev. Stat. Ann. § 2.015 reads, in its entirety, "[p]ersons of the age of eighteen (18) years are of the age of majority for all purposes in this Commonwealth except for the purchase of alcoholic beverages and for purposes of care and treatment of children with disabilities, for which twenty-one (21) years is the age of majority, all other statutes to the contrary notwithstanding."

In KP&A's view, 505 KAR 2:040 does not create an exception to Ky. Rev. Stat. Ann. §2.015, but rather it conflicts such that 505 KAR 2:040 should be declared void.  [R. 3-1 at 7.]  But on its face, Ky. Rev. Stat. Ann. § 2.015 is nothing more than a definition.  It creates no rights

17

or obligations and says nothing about the effect of being "the age of majority" except in the context of purchasing alcohol or the care and treatment of children with disabilities. Plus, taking KP&A's argument to its logical extreme, what comes of Ky. Rev. Stat. Ann. § 214.185, which provides minors with the right to consent to substance abuse treatment, mental health services, and treatment for venereal diseases? Or Ky. Rev. Stat. Ann. § 216B.400 which allows minors to consent to a medical examination as a victim of a sexual assault. Sure, those are statutes and 505 KAR 2:040 is a regulation, but properly promulgated regulations have the force of law, so why draw the line at 505 KAR 2:040? *Centre College v. Trzop*, 127 S.W.3d 562, 566 (Ky. 2003) ("In Kentucky, administrative regulations do have the force and effect of law when they have been duly promulgated and are consistent with the enabling legislation.")

Furthermore, the Kentucky Supreme Court has also found that minors can form the requisite consent for purposes of Kentucky's wiretapping act. *Radcliff v. Commonwealth,* 2022-SC-0242-MR, 2023 WL 8639385, at *5 (Ky. Dec. 14, 2023). And although minors have the *privilege* of avoiding a contract once they reach maturity, Kentucky courts have long recognized that minors do possess the requisite *capacity* to enter into contracts. *Mitchell by and through Fee v. Mitchell*, 963 S.W.2d 222, 223 (Ky. App. 1998) (citing *Wright v. Stanley Motor Co.*, 60 S.W.2d 144 (Ky. 1933). Under KP&A's theory, these holdings are similarly called into question.

Additionally, holding that minority itself is sufficient under 42 U.S.C § 10805(a)(4)(B)(i) would create a patchwork of protection across the states. The age of majority is not universal across the states, and some states do not even have a statutorily proscribed age of majority. Although eighteen is the age of majority in the lion's share of states with a statutorily proscribed age of majority, some states deviate. For example, in both Alabama and Nebraska, the age of

18

majority is nineteen.  Neb. Rev. St. § 43-2102(1); Ala. Code § 26-1-1.  In Mississippi, the age of majority is twenty-one.  Miss. Code Ann. § 1-3-27.

Further, in some states, a minor becomes of age on their birthday; in others, on the day preceding their birthday (a relic of seventeenth century England).  *Compare Mason v. Bd. Of Educ. of Baltimore Cnty.,* 375 Md. 504, 506 (Md. App. 2003) (interpreting Maryland's coming of age law to hold that a person attains a given age on the day preceding the anniversary of their birth) *with Commonwealth v. Iafrate*, 527 Pa. 497, 501 (Pa. 1991) (interpreting Pennsylvania's coming of age law to hold that a person attains a given age on the anniversary of their birth).  In some states, the marriage of a minor gives them contractual capacity; in others it does not. *Compare* Kan Stat. Ann. § 38-101 *with Mitchell by and through Fee v. Mitchell*, 963 S.W.2d 222 (Ky. App. 1998).

All this to say, a bright line rule that minority in itself is sufficient to render an individual unable to authority access to a P&A agency would result in an uneven application of PAIMI. This contravenes Congress's stated purpose in enacting PAIMI which was to rectify what it saw as wide variations in state systems that monitored the rights of individuals with mental illness. 42 U.S.C. § 10801(a)(4).  Accordingly, the Court will grant KP&A's requested relief insofar as it is entitled to the two Incident Reports requested on October 1, 2025, but no further relief is warranted at this stage to remedy KP&A's injury.

C

Next, Federal Rule of Civil Procedure 65(c) provides that the Court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  KP&A has asked the Court to waive the security

requirement because "[t]here is no evidence of risk of monetary damage to Kentucky Department of Juvenile Justice for its failure to fulfill its statutory duties." [R. 3-1 at 11.] The Department does not address the security requirement in its response, but the Court is under a duty to consider it, nevertheless. *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th. Cir. 1978) ("[W]e believe it was an error for the judge, not necessarily to have failed to require a bond in any particular amount, but to have failed to exercise the discretion required of him by Rule 65(c) by expressly considering the question of requiring a bond.")

Although the "only if" language of Rule 65(c) appears at first blush to be a mandatory requirement, courts have consistently held that the Court has discretion in whether to require security. *Appalachian Reg'l Healthcare, Inc. v. Coventry Health and Life Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013) ("The rule in our circuit has long been that the district court possesses discretion over *whether* to require the posting of security.") Given the Court's finding that the Department will not suffer substantial harm in disclosing records that will remain confidential once proffered to KP&A, the Court will waive the security requirement in this matter.

**D**

KP&A also moves for entry of a permanent injunction enjoining the Kentucky Department of Juvenile Justice from requiring it to obtain consent forms from juveniles before gaining access to their records. [R. 3-1 at 11.] "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that [for a preliminary injunction] the plaintiff must show a likelihood of success on the merits rather than actual success." *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012) (quoting *Amoco Prod. Co. v. Vill. Of Gambell*, 480 U.S. 531, 546 n. 12 (1987)). To obtain a permanent injunction, KP&A

20

must demonstrate: (1) actual success on the merits, (2) continuing irreparable harm, and (3) no adequate remedy at law. *SKS Merch. LLC v. Barry*, 233 F.Supp.2d 841, 852 (E.D. Ky. 2002).

The Court need not belabor this analysis because a permanent injunction would be clearly premature at this juncture and not necessary to prevent continuing harm. Ordinarily, a preliminary injunction is entered after an adjudication on the merits, either in the form of a trial or grant of summary judgment. *Moltan Co v. Eagle-Pitcher Indus., Inc.*, 55 F.3d 1171, 1174 (6th Cir. 1995) (holding that the district court did not have the authority to enter the permanent injunction prior to trial or an evidentiary hearing.) No such adjudication has taken place here. KP&A filed the instant motion one day after filing its original Complaint. [R. 1; R. 3.] At this juncture, KP&A has demonstrated a *likelihood* of success on the merits, but not *actual* success.

To the extent that KP&A asks the Court to enjoin the Department from *ever* requiring it to obtain a consent form to access juvenile records, the Court cannot speculate as to whether KP&A will have met the statutory prerequisites in a factual predicate not before the court. Furthermore, KP&A has not demonstrated any risk of continuing harm. In fact, once the requested Incident Reports are produced pursuant to this Court order, KP&A will not suffer further injury. It will have fulfilled its statutory mandate and be able to investigate the reported incidents without interference. Additionally, the Department has explicitly stated that it will produce the records in the event KP&A prevails on the merits. [R. 6 at 11.] The Court has no reason to believe, and KP&A has not provided one, that the Department will not comply with this Court's directives. Thus, the Court will deny KP&A's motion for permanent injunction.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Plaintiff's Motion for Preliminary Injunction **[R. 3]** is **GRANTED**;

2. The Plaintiff's Motion for Permanent Injunction **[R. 3]** is **DENIED**; and

3. Defendant Randy White, in his official capacity as Commissioner of the Kentucky Department of Juvenile Justice, is **ENJOINED** from denying Plaintiff Kentucky Protection and Advocacy access to the requested Incident Reports.

This the 20th day of March, 2026.

Gregory F. Van Tatenhove
United States District Judge